UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEVEN SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:12CV2392SNLJ(ACL) |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Steven Smith for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**I. Procedural History**

Smith is presently incarcerated at Potosi Correctional Center in Mineral Point, Missouri pursuant to the Sentence and Judgment of the Circuit Court of St. Charles County, Missouri. (Respt's Ex. G at 144-47.)

On August 22, 2008, a jury found Smith guilty of forcible rape, assault in the second degree, felonious restraint, forcible sodomy, and three counts of armed criminal action. (Respt's Ex. D at 584-85.) There was a single victim of all the offenses, a female. Smith was sentenced to twenty-five years' imprisonment for the forcible rape charge, and ten years' imprisonment for the related armed criminal action charge; five years' imprisonment for the assault in the second degree count, and five years' imprisonment for the related armed criminal action charge; seven years' imprisonment for the felonious restraint count, and seven years' imprisonment on the related armed criminal action charge; and fifteen years' imprisonment for forcible sodomy.

1

(Respt's Ex. G at 144-47.) The trial court ordered that the sentences for forcible rape and forcible sodomy were to be served concurrent with each other but consecutive to the other five counts, which were to be served concurrently with each other, for a total of thirty-five years' imprisonment. *Id.*

Smith raised three points on direct appeal of his convictions. (Respt's Ex. H.) In his first point, Smith argued that the trial court erred in sustaining the state's objection and prohibiting him from presenting evidence of his prior consensual sexual conduct with the victim. *Id.* at 25. In his second and third points on appeal, Smith argued that the trial court abused its discretion in sustaining the state's objections and refusing to allow Adrian Smith and Darryl Southard to testify as to the victim's poor reputation for truthfulness. *Id.* at 27, 29. On June 29, 2010, the Missouri Court of Appeals affirmed Smith's convictions. (Respt's Ex. J.)

Smith filed a timely motion for post-conviction relief under Rule 29.15. (Respt's Ex. K at 4-9.) Smith raised the following claims: (1) he was denied due process when the chain of evidence was disrupted; (2) he was denied due process when evidence of consensual sex with the victim was suppressed; and (3) he was denied due process when a state witness gave false testimony. *Id.* Counsel was appointed, and filed a Memorandum and Counsel Statement, in which he stated that he and Smith agreed that all claims known had been alleged in the *pro se* motion, and that Smith was waiving filing of an amended post-conviction motion. (Respt's Ex. L at 3-4). On April 13, 2011, Smith's counsel and the state presented arguments on the case and the motion court denied Smith's request for relief and for an evidentiary hearing. (Respt's Ex. K at 4-9.) The motion court issued an Order and Judgment containing Findings of Fact and Conclusions of Law on April 28, 2011. *Id.* at 14-19.

In his sole point on appeal from the denial of post-conviction relief, Smith argued that the motion court clearly erred in denying his post-conviction motion because post-conviction counsel

abandoned Smith by failing to timely file an amended motion. (Respt's Ex. M at 13.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. O.)

Smith timely filed the instant Petition on December 26, 2012. (Doc. 1.) Smith raises three grounds for relief: (1) the trial court abused its discretion by finding that evidence of prior sexual activity between Smith and the victim was inadmissible under Missouri's rape shield statute; (2) the trial court abused its discretion by striking Adrian Smith's testimony regarding the character of the victim for truthfulness; and (3) the trial court plainly erred in refusing to permit Darryl Southard to testify regarding the victim's character for truthfulness. *Id.*

On March 19, 2013, Respondent filed a Response to Order to Show Cause, in which he argues that the Court should decline to review all three claims for lack of a substantial federal question. (Doc. 12.) Respondent also contends that Ground Three is procedurally defaulted.

## II. Facts[1]

Smith was married to the victim's mother before she died from cancer on July 12, 2006. At the time of her mother's death, the victim was twenty-nine years old.

On the morning of October 6, 2006, the victim received a phone call from Smith who sounded "really down." Subsequently, the victim drove to the trailer park where Smith lived and picked him up. During the day, the victim brought Smith along to visit with family members and run errands before returning to Smith's trailer home that afternoon. While at Smith's trailer, the two talked and drank alcoholic beverages.

Later in the evening, the victim decided to spend the night at Smith's trailer and fell asleep on the loveseat in the living room. In the middle of the night, the victim felt Smith playing with her hair and trying to kiss her. The victim asked Smith to leave her alone because she was trying

---

[1] The Court's summary of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal, except that the victim is referred to as "victim" rather than by her initials. (Respt's Ex. J at 1-6.)

3

to sleep. Smith told her to take off her clothes. The victim thought Smith was "kidding around" and again told him to leave her alone. Smith then pulled out a knife and instructed the victim to "take off your clothes or I'm going to slit your F-ing throat." Still unsure whether Smith was serious, the victim told him to leave her alone. Smith then started "stabbing" at the victim and held the knife to the victim's throat and said, "I told you to take off your fucking clothes."

The victim began to remove her clothes. As she took off her sweatshirt, the victim noticed that her white t-shirt was "full of blood" and that blood was running down her arms, legs, and stomach. The victim realized that she had been stabbed in her left breast and upper left arm.

Smith ordered the victim into his bedroom. Once in the bedroom, Smith had the victim remove the rest of her clothes. Smith then instructed the victim to lie down on the bed and spread her legs. By this point, the victim was "screaming", "bawling", had "snot rolling down [her] nose", and "could hardly breathe." The victim sat on the bed, but when she would not open her legs, Smith climbed on top of the victim, forced her legs open, and put his penis in her vagina. While having sex, Smith held the knife to the victim's throat. Later, Smith turned the victim over and penetrated her vagina from behind.

The victim attempted on several occasions to escape from Smith's trailer. The first time, the victim attempted to exit through the back door while Smith was in the kitchen grabbing cigarettes, but the door was locked. On the second attempt, the victim tried to leave through the front door, but it was also locked. When Smith caught the victim attempting to escape through the front door, a struggle ensued. A lamp was knocked off a table and a recliner was flipped over. Eventually, Smith grabbed the victim by her hair and, with the knife, ordered the victim back to the bedroom. While back in the bedroom, Smith instructed the victim to lie on the bed and Smith put his mouth on the victim's vagina.

Smith returned to the kitchen, and the victim managed to escape from the trailer. The victim ran naked to the neighbor's trailer "banging" on the door "screaming help, help!" The neighbors, however, were out of town. Smith caught up to the victim and grabbed her by the hair and started dragging her back to his trailer, while holding a butcher's knife.

Tim Russell, who lived in one of the neighboring trailers, heard the "banging" and "yelling" outside. Mr. Russell went outside and saw Smith dragging the victim by her arm. The victim was naked and Smith was holding a knife in his hand. Mr. Russell saw the victim "trying to get away" from Smith. Mr. Russell went back in his trailer and had someone call the police.

Back in his trailer, Smith ordered the victim into the bedroom. Smith told the victim, I was "going to let you go, but now that I got to looking at your tits…it's not going to happen."

The victim managed to escape the trailer a second time. This time, the victim ran to Mr. Russell's trailer. The victim beat on the door yelling for the people inside to help her. Mr. Russell opened the door and let her inside to wait for the police to arrive. The victim was still naked and had blood on her.

Soon thereafter, police officers arrived at the scene and entered Smith's trailer. The officers saw a lamp lying on the floor and other items "strewn about in the living area." Then, the officers heard Smith announce that he was in the bedroom. As the officers entered the bedroom, they saw Smith lying on the bed with a "folding knife protruding from the center of his chest." The officers asked Smith what had happened, and Smith told the officers to leave him alone so he could die. Other than the knife wound, the officers did not observe any other injuries on Smith. Smith made a statement to the officers where he said that he had "stabbed the girl and stabbed himself."

Paramedics arrived at Smith's trailer and treated Smith. The paramedics observed that there was no bleeding from Smith's knife wound. The paramedics also noticed blood on the

5

pillow in the bedroom where Smith was, but the amount of blood was substantially greater than any attributable to the visible wounds on Smith. After the paramedics transported Smith to the hospital, doctors discovered a wound on one of Smith's arms in addition to the knife wound in his chest. Both injuries were "superficial" and were treated with steri-strips -- "butterfly bandages." The doctors noticed that Smith was "behaving in an intoxicated manner." Smith's toxicology report tested positive for cocaine and showed a blood alcohol level of .246%."

At the trailer park, the police officers also found the victim at Mr. Russell's home. The officers noticed that the victim was "shaking" and "crying" and that she had "fresh" cuts on her left arm and chest. Paramedics transported the victim to a hospital where hospital personnel treated her stab wounds and administered a rape kit. The victim's stab wounds were one to two centimeters deep. The rape kit revealed that, in addition to the stab wounds, the victim had bruises to her neck and right buttock and she had some redness on the base and opening of her vagina and an abrasion on her cervix.

Following the incident, the police arrested Smith. Subsequently, a grand jury charged Smith by indictment with forcible rape, forcible sodomy, second degree assault, felonious restraint, and three counts of armed criminal action.

Prior to his trial, Smith filed a motion seeking to offer evidence of prior consensual sexual conduct between himself and the victim as evidence that the victim consented to sex on October 7, 2006. Smith and Smith's friend, Daryl Southard, testified at the hearing. Mr. Southard testified that Smith had told him about his sexual encounters with the victim. The trial court denied Smith's motion. Mr. Southard also testified as to his opinion that the victim had a poor reputation for truthfulness. The trial court sustained the state's objection to Mr. Southard's testimony, and the defense did not attempt to call Mr. Southard at trial.

At trial, the state called the victim, who testified as to the events that occurred on October 6, 2006. The state also called the neighbor, Mr. Russell, the responding police officers, the paramedics, the doctors who treated Smith's and the victim's wounds, and the nurse who administered the rape kit.

After the state rested, the defense called Adrian Smith to testify as to the opinion of the victim's poor reputation for truthfulness in the community. The state objected to Mr. Smith's testimony, and the trial court sustained the objection.

Smith testified on his own behalf. Smith testified that he and the victim had consensual sex on the night in question. Smith testified that after he and the victim had sex, the victim became upset and they began arguing about some of the victim's mother's belongings. Smith stated that he asked her if she would feel better if he were dead, so that she could have all of her mother's belongings. Smith testified that, in an attempt to calm the victim, he picked up a knife "just jokingly with her and she started teasing me and we started wrestling with the knife." Smith testified that, while wrestling, both he and the victim "got stuck." Smith stated that the victim subsequently ran out of the trailer naked and he chased after her. He denied having a knife in his hand while outside the trailer. Smith stated that, after they returned to his trailer, they began arguing again. He again asked the victim if she would feel better if he were dead, and then he stabbed himself.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV. Procedural Default

Respondent contends that Ground Three is procedurally defaulted. In Ground Three, Smith challenges the trial court's ruling on the testimony of Darryl Southard. Respondent argues that, although Smith presented the testimony of Mr. Southard at a pre-trial hearing on his rape shield notice, he did not attempt to call Mr. Southard at trial. Because Smith did not attempt to call Mr. Southard at trial, The Missouri Court of Appeals found Smith had failed to

preserve this claim for appeal and that it could only review this claim for plain error. (Respt's Ex. J at 13.)

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Until recently, there was a split within the Eighth Circuit regarding whether plain-error review by a state appellate court waived a procedural default, and courts were permitted to choose which line to follow. *Clark v. Bertsch,* 780 F.3d 873, 876 (8th Cir. 2015) (*comparing Toney v. Gammon,* 79 F.3d 693, 699 (8th Cir. 1996) and *Hayes v. Lockhart,* 766 F.2d 1247, 1253 (8th Cir. 1985) (state court's plain-error review does not excuse procedural default) *with Thomas v. Bowersox,* 208 F.3d 699, 701 (8th Cir. 2000), *Bannister v. Armontrout,* 4 F.3d 1434, 1445 n. 6 (8th Cir. 1993) and *Williams v. Armontrout,* 877 F.2d 1376, 1379 (8th Cir. 1989) (state court's plain-error review permits federal review)). In 2011, the Eighth Circuit, sitting *en banc,* directed that, in the event of an intra-circuit split, future panels were to "determine and follow the

earliest precedent." *Id.* (*citing Mader v. United States,* 654 F.3d 794, 800 (8th Cir. 2011)). The court then determined that the earliest controlling panel opinion on the effect of plain-error review is *Hayes,* which held that such claims are procedurally defaulted and unreviewable, absent cause and prejudice. *Id.* (*quoting Hayes,* 766 F.2d at 1253).

Smith does not attempt to excuse his procedural default on the basis of cause and prejudice or manifest injustice. Thus, Smith's claim in Ground Three is procedurally defaulted.

## V. Smith's Claims

In all three of his grounds for relief, Smith challenges the state court's evidentiary rulings. Generally, questions concerning the admissibility of evidence are matters of state law, and the issue on habeas review is not whether the evidence was properly admitted under state law. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991). Evidentiary issues can, however, form the basis for habeas relief if the error constitutes an independent constitutional violation. *See Bounds v. Delo,* 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* (quoting *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *See Meadows v. Delo,* 99 F.3d 280, 283 (8th Cir. 1996).

### 1. Ground One

In his first ground for relief, Smith argues that the trial court erred in excluding evidence of a prior sexual relationship between himself and the victim under the Missouri rape shield statute.

Missouri's rape shield statute, Mo. Rev. Stat. § 491.015, creates a presumption that evidence of a victim's prior sexual conduct is irrelevant to prosecutions for sex crimes. The statute renders evidence of prior sexual conduct inadmissible unless it falls within one of four specific exceptions. *See* Mo. Rev. Stat. § 491.015.

Before trial, Smith filed a motion to offer evidence of his alleged prior sexual conduct with the victim pursuant to section 491.015.1(1), an exception to the rape shield statute. (Respt's Ex. G at 32-33.) This exception allows "[e]vidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime." Mo. Rev. Stat. § 491.015.1(1).

A hearing was held on Smith's motion, at which Smith testified that he had had sex with the victim on several occasions. (Respt's Ex. A at 19-20.) Smith testified that he first had sex with the victim around August 2, 2006; and he had sex with the victim a second time approximately one to two weeks later. *Id.* at 19-20, 23. Smith testified that the victim initiated the sexual encounter on both occasions, and that the sexual activity was consensual. *Id.* at 20-25. Smith also called Darryl Southard to testify at the hearing. Mr. Southard testified that Smith had called Mr. Southard in August of 2006, and told him that he had had sex with the victim on several occasions. *Id.* at 48.

The trial court entered written findings excluding the evidence of the alleged prior sexual activity between the victim and Smith. (Respt's Ex. G at 62-67.) The court found that, according to Smith's own testimony, he was not claiming consent because he testified that he did not have sex with the victim after August 2006. *Id.* at 63. The rape occurred in October. The court further found that the facts presented at the hearing were not reasonably

11

contemporaneous with the date of the alleged crime. *Id.* at 65. Finally, the Court found that Smith's and Darryl Southard's testimony lacked credibility. *Id.*

At trial, Smith indicated that he wished to testify about the prior consensual sexual activity with the victim. (Respt's Ex. D at 439-40.) The trial court again denied Smith's request to present this evidence, but indicated that it would accept Smith's testimony presented at the pre-trial hearing as an offer of proof concerning Smith's trial testimony. *Id.* Smith also supplemented his offer of proof with additional testimony. *Id.* at 456. Specifically, Smith testified that he continued to have consensual sex with the victim throughout the month of August. *Id.*

In his direct appeal, Smith argued that the trial court erred in sustaining the state's objection and prohibiting Smith from presenting evidence of his alleged prior consensual sexual conduct with the victim. Smith argued that the evidence was admissible under Mo. Rev. Stat. § 491 to prove consent, which was Smith's defense to the charges of forcible rape and forcible sodomy. The court noted that, in determining the "reasonably contemporaneous" standard, the court must examine whether the exclusion of the evidence deprived the defendant of a fair trial. (Respt's Ex. J at 9.) The court held that, because there was sufficient evidence adduced at trial corroborating the victim's account of the incident, Smith was not denied a fair trial due to the exclusion of the evidence of prior sexual conduct. *Id.* at 11.

The United States "Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," such that a court may not "exclude competent, reliable evidence ... central to the defendant's claim of innocence [,] ... [i]n the absence of any valid state justification." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986) (citation omitted). There are limits on this right, however. *Garcia v. Mathes,* 474 F.3d 1014, 1017–18 (8th Cir. 2007) (noting that a trial court may, without violating the constitution, exclude defense evidence that is repetitive, is

12

only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues) (citing *Holmes v. South Carolina,* 547 U.S. 319, 326–27 (2006) ("[T]he Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote.").

In *Michigan v. Lucas,* 500 U.S. 145 (1991), the Supreme Court applied these principles in the context of a state court's exclusion of evidence under the state's rape shield statute in a criminal trial. The Court explained that a trial court must balance a state's interest in excluding certain evidence under a rape shield statute against a defendant's constitutionally protected interest in admitting that evidence, on a case-by-case basis, with neither interest being superior per se. *Id.* at 152–53.

Upon review of the record, the Court concludes that the state courts' decisions here on this matter were not unreasonable. The alleged consensual sexual encounters occurred over one month prior to the rape. The state offered significant evidence corroborating the victim's account that Smith sexually assaulted her, including the testimony of the neighbor who witnessed part of the incident, the responding police officers, the paramedics, the doctors who treated Smith's and the victim's injuries, and the nurse who administered the rape kit. The evidence of Petitioner's guilt was overwhelming, rendering any error in the exclusion of the proffered evidence harmless. *See Jeffries v. Nix,* 912 F.2d 982, 989 (8th Cir. 1990) (holding that the exclusion of evidence under state's rape shield law was at most harmless error where evidence of the petitioner's guilt was overwhelming); *Dittrich v. Woods,* 419 F. App'x 573, 578 (6th Cir. 2011) (same).

Accordingly, the undersigned recommends that Ground One be denied.

**2.     Grounds Two and Three**

In his second and third grounds for relief, Smith argues that the trial court abused its discretion in sustaining the state's objections and refusing to allow Adrian Smith and Darryl Southard to testify as to the victim's reputation for truthfulness.

At the pre-trial hearing, Mr. Southard testified that the victim had a poor reputation for truthfulness. (Respt's Ex. A at 45.) The trial court sustained the prosecution's objection to Mr. Southard's testimony, and the defense did not attempt to call Mr. Southard at trial.

At trial, after the state rested, the defense called Adrian Smith to testify as to his opinion of the victim's reputation for truthfulness in the community. (Respt's Ex. D at 460-65.) Mr. Smith testified that he was the victim's ex-boyfriend, and that he had lived with the victim, the victim's mother, and Steven Smith for approximately three months. *Id.* at 461-62. When asked his opinion of the victim's reputation for truthfulness, Mr. Smith testified that the victim was not truthful. *Id.* at 465. The state objected to Mr. Smith's testimony. *Id.* The state argued that Mr. Smith's testimony was based on his personal experience, which was not a proper foundation for character evidence. *Id.* The trial court sustained the objection, and ordered Mr. Smith's testimony stricken from the record. *Id.* at 466.

In his direct appeal, Smith argued that the trial court abused its discretion in sustaining the state's objections to the testimony of Adrian Smith and Darryl Southard regarding the victim's poor reputation for truthfulness. The court noted that, under Missouri law, a party may impeach the victim's testimony by introducing evidence of her poor reputation in the community for truthfulness. (Respt's Ex. J at 12.) The court stated personal opinion as to a witness's truthfulness, however, is immaterial and not admissible. *Id.*

The court held as follows regarding Mr. Smith:

> With regard to Adrian Smith, Mr. Smith testified that he dated [the victim] and lived with [the victim], [the victim]'s mother, and Defendant for "[m]aybe three months at the most." Mr. Smith stated that while he "didn't

14

> know too many people" in [the victim]'s neighborhood, he did know some people "that lived in the community." Mr. Smith also testified that he "[m]et a few friends of [the victim's] family." Defense counsel asked Mr. Smith what was his "opinion on [the victim's] reputation for truthfulness" based on his interactions with the people he met in [the victim]'s household. Over the State's objection, Mr. Smith responded, "[S]he's not very truthful." On cross-examination, the prosecutor asked Mr. Smith whether his opinion that [the victim] was untruthful was "based on [his] personal experience." Mr. Smith answered affirmatively. The prosecutor then objected and moved to strike Mr. Smith's testimony regarding [the victim]'s poor reputation for truthfulness. The trial court sustained the objection, struck the testimony, and instructed the jury to disregard Mr. Smith's answer. In an offer of proof that followed, Mr. Smith again testified that he lived with [the victim] and her family and that he formed an opinion as to [the victim]'s reputation for truthfulness, and that her reputation was "[n]ot good." The trial court refused the offer of proof.
>
> The trial court did not abuse its discretion in sustaining the State's objection to Mr. Smith's testimony because the testimony was based on Mr. Smith's personal opinion and not on his knowledge of [the victim]'s reputation in the community. [citation omitted]. Although Mr. Smith knew some people in [the victim]'s neighborhood, there was no evidence that Mr. Smith talked with any of those people about [the victim]'s reputation. Additionally, Mr. Smith admitted that his opinion of [the victim]'s reputation was based on his "personal experience."

(Respt's Ex. J at 12-13.)

With respect to Mr. Southard, the court first found that Smith's claim was not properly preserved for appeal because Smith never attempted to call Mr. Southard as a witness at trial. *Id.* at 13. Reviewing for plain error, the court held as follows:

> As with Mr. Smith, Mr. Southard was not qualified to testify regarding [the victim]'s reputation for truthfulness because there was no evidence that Mr. Southard was familiar with [the victim]'s reputation in the community. Mr. Southard, at no time, testified that he was familiar with the people in [the victim]'s neighborhood or had discussed with others [the victim]'s reputation for truthfulness. Moreover, when asked by defense counsel whether he knew of [the victim]'s reputation for truthfulness in the community, Mr. Southard responded, "I never really knew her to be truthful." Mr. Southard's own testimony demonstrates that his opinion of [the victim]'s truthfulness was based on his own experience and not her reputation in the community. Consequently, Mr. Southard's testimony was not proper evidence of [the victim]'s poor reputation for truthfulness and the trial court did not err, plainly or otherwise, in excluding it.

*Id.* at 14.

15

Under federal evidentiary law, a witness's credibility "may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Fed.R.Evid. 608(a). To establish a foundation for such testimony, the witness must show "such acquaintance with the [person under attack], the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded." *Michelson v. United States*, 335 U.S. 469, 478 (1948).

In the present case, the trial court excluded reputation evidence because Smith failed to lay a sufficient foundation for the evidence. The record supports the court's determination that neither Mr. Smith nor Mr. Southard was familiar with the victim's reputation for truthfulness in the community. Thus, the state courts' decisions on these grounds did not involve an unreasonable application of federal law and were not based on unreasonable determinations of the facts.

Accordingly, the undersigned recommends that Ground Two and Three be denied.

## VI.     Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Smith has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the Petition of Steven Smith for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

						_____
						ABBIE CRITES-LEONI
						UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of January, 2016.